UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| **DEALER TIRE, LLC,** : | |
| : | |
| **Plaintiff,** : | **CASE NO.** |
| : | |
| v. : | **JUDGE** |
| : | |
| **GUY BARBANO and** : | |
| **AUTOMATED MEDIA, INC.,** : | **COMPLAINT AND** |
| : | **DEMAND FOR** |
| **Defendants.** : | **JURY TRIAL** |

Plaintiff Dealer Tire, LLC ("Dealer Tire"), by its undersigned attorneys, for its Complaint against Defendants Guy Barbano and Automated Media, Inc. ("AMI"), alleges as follows:

**Nature of the Action**

1.  This is an action for breach of contract, tortious interference with contract, misappropriation, and violations of the Defend Trade Secrets Act and the Ohio Uniform Trade Secrets Act.

2.  Dealer Tire manages tire and other light maintenance programs for various automobile manufacturers, dealer groups, and independent car dealerships, and sells/distributes tires in furtherance of these programs to its car dealership customers. Guy Barbano was an employee of Dealer Tire from 2013 until November 29, 2017. Upon joining Dealer Tire, and as a condition of his employment as an account manager, Mr. Barbano signed a Preservation and Protection Agreement (the "Agreement") and a Non-Competition Addendum (the "Addendum"),

3. both dated July 22, 2013. Under the Agreement, Mr. Barbano agreed not to solicit Dealer Tire customers for a period of two years after termination of his employment with Dealer Tire, and not to disclose any confidential information of Dealer Tire. Under the Addendum, Mr. Barbano agreed not to compete with Dealer Tire for a period of one year after termination of his employment with Dealer Tire.

4. Mr. Barbano recently resigned from Dealer Tire, and in blatant violation of the Agreement and the Addendum he now is working for Defendant AMI, one of Dealer Tire's direct competitors. Beginning in 2018, AMI will replace Dealer Tire as the preferred tire program to Chrysler car dealerships. At AMI, Mr. Barbano will be in a position to solicit business from and service various current and former Dealer Tire customers, including the exact same Chrysler dealerships upon whom he called and with whom he developed business relationships while he was employed with Dealer Tire. Not only will he be able to exploit relationships developed at Dealer Tire's expense, but he also will be able to utilize his knowledge of Dealer Tire's trade secrets, confidential business strategies, technologies and proprietary analytic tools and techniques to undercut Dealer Tire in the market and provide AMI with an unfair advantage. Dealer Tire already has begun to receive reports from the field that Mr. Barbano is starting, on behalf of AMI, to call upon the same customers he serviced for Dealer Tire.

5. What's more, eleven days before Mr. Barbano's resignation, Dealer Tire rolled out a detailed and highly confidential strategy to maintain its business with Chrysler dealerships going into a dramatically changed business environment in 2018. Dealer Tire has seen indications from the field that Mr. Barbano already may have leaked some of those trade secret strategies.

6. Mr. Barbano and AMI both have ignored requests to comply with the Agreement and Addendum.  Accordingly, Dealer Tire now brings this action to stop Mr. Barbano from continuing to violate Dealer Tire's rights and to restrain further use and disclosure of Dealer Tire's trade secrets and other confidential and proprietary information.

## Parties

7. Plaintiff Dealer Tire, LLC is a Delaware limited liability company with its principal place of business located at 7012 Euclid Avenue, Cleveland, Ohio 44103.  Dealer Tire's sole member is Dealer Tire Holdings LLC, a Delaware limited liability company.

8. Defendant Guy Barbano is an individual and a former employee of Plaintiff.  Mr. Barbano is a citizen of Connecticut.

9. Defendant AMI is a Michigan corporation with its principal place of business located at 12171 Beech Daly Road, Redford Charter Township, Michigan 48239.

## Jurisdiction and Venue

10. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.  Dealer Tire's claims are based, in part, on violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.  This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a).

11. This Court also has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

12. This Court has personal jurisdiction over Defendant Guy Barbano because pursuant to Section 9 of the Agreement, to which Mr. Barbano is a party, he agreed to "irrevocably submit[ ] to the exclusive jurisdiction of the United States District Court for the Northern District of Ohio . . . in any such action, suit or proceeding relating to or arising under

3

this Agreement or any Addenda hereto . . . and waives any objection based on *forum non conveniens* or any other objection to venue therein."

13. This Court has personal jurisdiction over Defendant AMI pursuant Ohio Revised Code § 2307.382 because, upon information and belief, AMI conducts business within the State of Ohio and because AMI has caused tortious injury within the State of Ohio.

14. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to this action occurred in this District and because Defendants are subject to personal jurisdiction in this District.

## Dealer Tire's Business

15. Dealer Tire, among its various businesses, manages tire and other light maintenance programs for various automobile manufacturers (original equipment manufacturers, ("OEMs"), dealer groups, and independent car dealerships, and sells/distributes tires in furtherance of these programs to its car dealership customers. In furtherance of its programs, Dealer Tire works with its car dealership customers to analyze and improve their tire sales and profitability through use of various techniques, tools, strategies, technologies and training methods. Dealer Tire works to know its customers inside and out and translates this knowledge into actionable intelligence for car dealerships, ultimately identifying opportunities that will help increase sales and customer satisfaction. Dealer Tire does this by working with its car dealership partners on every aspect of their business — from channel and inventory analysis and strategy to delivery and support to training and sales.

16. Compared to other vendors that simply sell automotive parts, Dealer Tire delivers value to dealerships by engaging with them in a consultative process to improve their sales. By providing consultative services, such as teaching sales techniques to dealership employees,

Dealer Tire equips dealerships to become successful retailers of tires and maintenance care products. Dealer Tire manages programs and provides its services to most of the OEM car brands, including: BMW, Mini, Audi, Chrysler, Dodge, Fiat, Hyundai, Infiniti, Jaguar, Jeep, Kia, Land Rover, Lexus, Mazda, Mercedes-Benz, Nissan, Rolls-Royce, Toyota, Volkswagen, and Volvo.

17. Dealer Tire employs a sales force of over four hundred employees, including over two hundred regional managers and account managers, whose primary responsibility is to build and maintain relationships with car dealerships. In a typical day, an account manager visits two to four dealerships, consulting with dealership managers to help educate them on how to sell more tires and maintenance care products, such as car batteries. Among other consultative services, account managers assess their dealerships' current service business, identify opportunities for improvement, help them develop an overall business plan, and then implement and maintain that plan through various techniques and ongoing training. This typically includes tailored improvements to dealers' inventory management processes, educating dealers on and helping them manage various incentive programs, making available the use of various proprietary service lane inspection processes and tools, as well as ongoing training in sales techniques to support their overall goal of improved product and service sales and profitability.

18. Over time, Dealer Tire has developed several proprietary tools that have contributed to its success and drive profits. Dealer Tire employs a system of Automatic Order Replenishment ("AOR"), which responds to a dealership's sales in real time and replenishes its inventory of tires on a daily basis. Dealer Tire also brings to bear its Dynamic Retail Selling Guide ("DRSG"), proprietary sales software that allows a dealership's service advisors to make intelligent sales decisions without necessarily being experts in the sale of tires or maintenance

care products. The Company also has developed service lane inspection tools as well as various dealership training tools/methods, which are used to identify sales opportunities that a dealership may otherwise miss.

19. Dealer Tire invests heavily in the training of its regional sales managers and account managers. The Company organizes its training programs under the banner of "Dealer Tire University," and it provides comprehensive training to all new account managers as well as continuing training sessions throughout an employee's tenure.

### Mr. Barbano's Role At Dealer Tire

20. Until recently, Mr. Barbano was a Dealer Tire account manager, with responsibility for certain Chrysler dealerships in parts of Connecticut, Massachusetts, and the Albany, New York area.

21. Mr. Barbano's duties as account manager included the various consultative services previously described, which Mr. Barbano accomplished by communicating regularly with and visiting Chrysler dealerships. Mr. Barbano was responsible for using the extensive training he was provided by Dealer Tire to work with the service managers and other employees of dealerships to increase the efficiency and effectiveness of their sales processes, advising dealerships on how they might improve their profits, and communicating with field representatives of Chrysler regarding dealership visits and promotions. He also was responsible for ensuring these dealerships had optimal inventory of tires and maintenance care products. As an account manager, Mr. Barbano developed relationships and detailed familiarity with the business needs and preferences of the dealers that he served.

22. During the course of Mr. Barbano's employment between 2013 and his resignation in November 2017, he attended more than 40 specialized trainings provided by

Dealer Tire to develop business and relationships with the owners, managers and other representatives of car dealerships.  This training and dealership channel knowledge provided Mr. Barbano with an understanding of, among other things, Dealer Tire's pricing system, dealership lists, dealership contacts, marketing strategies, sales techniques, selling process, tire program elements, automobile manufacturer field contacts, and channel-unique information technology.

23. Mr. Barbano was trained in and had access to Dealer Tire's proprietary business tools, sales methods, and other confidential business information.  He was familiar with and used AOR, the DRSG, and Dealer Tire's service lane inspection tools and other technologies.  He had access to all of Dealer Tire's sales data and was therefore able to view the purchases of each dealership, and he was familiar with dealers' inventory levels and delivery schedules.  He also knew the Company's sales goals.

### Mr. Barbano's Agreement To Restrictive Covenants

24. Upon commencement of his employment with Dealer Tire, Mr. Barbano signed a Preservation and Protection Agreement (the "Agreement") and a Non-Competition Addendum (the "Addendum"), both dated July 22, 2013.  Under the Agreement, Mr. Barbano agreed not to solicit Dealer Tire customers for a period of two years after termination of his employment from Dealer Tire, and not to disclose any confidential information of Dealer Tire.  Under the Addendum, Mr. Barbano agreed not to compete with Dealer Tire for a period of one year after termination of his employment with Dealer Tire.  A true and correct copy of the Agreement is attached hereto as Exhibit A and a true and correct copy of the Addendum is attached hereto as Exhibit B.

25. Section 2 of the Agreement provides, in relevant part:

> To the fullest extent permitted by applicable law, Employee
> agrees that during the term of his/her employment and for a

7

> period of two (2) years directly following the end of Employee's employment for any reason . . . Employee will not in any manner, either directly or indirectly, for Employee or any third party, do any of the following:
>
> a) recruit, hire, solicit, or induce any employee, agent, representative, customer, former customer, vendor, supplier, or any other person or concern purchasing from, selling to, dealing with, or in any way associated with the Company to terminate or alter such association with the Company;
>
> (b) assist others to recruit, hire, solicit, or induce any employee, agent, representative, customer, former customer, vendor, supplier, or any other person or concern purchasing from, selling to, dealing with, or in any way associated with the Company to terminate or alter such association with the Company; or
>
> (c) to otherwise do anything, directly or indirectly, to interfere in any fashion with the business relationships between the Company and its customers, suppliers, or any other such persons or concerns, including, but not limited to, diverting or soliciting or attempting to divert or solicit any vendors, suppliers, customers or employees of the Company for Employee's own direct and/or indirect benefit or the benefit of a third party.

26. Section 3 of the Agreement provides, in relevant part:

> Employee agrees that during, and forever after the termination of Employee's employment . . ., Employee will not disclose, directly or indirectly, to any unauthorized person, or otherwise use or divulge in any such way, the Company's trade secrets or other Confidential Information for Employee's own benefit, either directly or indirectly, or for the benefit of any third party, without the express written permission of the President of the Company. Employee acknowledges that in having access to the Company's business facilities and Confidential Information, Employee is acquiring knowledge of production, machinery, methods, materials, techniques and the like that are directly involved with the Company's operations and which are not otherwise available to the general public or Company's competition.

27. Section 1 of the Addendum provides, in relevant part:

> Employee agrees that during his/her employment with the Company and for a period of one (1) year after the termination of Employee's employment . . . Employee will not engage directly or indirectly in the provision of services or other activities for, any Competing Business as an officer, director, employee, agent, salesperson, consultant, owner, shareholder, principal, adviser, partner, associate, independent contractor or in any other capacity, nor will Employee assist others in engaging in any Competing Business.

28. Pursuant to Section 9 of the Agreement, the Agreement and Addendum are governed by the laws of the State of Ohio.

### Dealer Tire's Chrysler/MOPAR Relationship

29. With respect to Chrysler dealerships, Dealer Tire has for the past five years operated the exclusive OEM tire program for MOPAR, the parts, service, and customer care organization of Fiat Chrysler Automobiles N.V. Around mid-2016, MOPAR and Dealer Tire began negotiations to renew this arrangement. After receiving several extensions of the deadline for a decision, on September 27, 2017, MOPAR terminated the arrangement.

30. Starting in 2018, upon information and belief, AMI will perform essentially the same tire program functions for and on behalf of MOPAR that Dealer Tire has performed for the past five years. Chrysler dealerships, however, as independent businesses, will still have the option to work with Dealer Tire instead of AMI if they so choose, in a competitive environment.

31. Upon information and belief, AMI has established or soon will be hiring employees to be assigned to MOPAR's twelve business centers across the country that will, upon information and belief, be responsible for promoting and servicing Chrysler dealerships on behalf of and through AMI's new MOPAR tire program.

32. In an effort to retain as much of the business that had flowed from the MOPAR relationship as possible in the coming year, Dealer Tire developed a highly specialized and

confidential business strategy. The strategy included innovative incentive plans and other ways to retain as much Chrysler-related business as possible.

33. On November 15 and 16, 2017, Dealer Tire held a meeting at its headquarters in Cleveland, Ohio for all of its employees with responsibilities relating to MOPAR to introduce and discuss this confidential strategy, and to set sales expectations for 2018.

34. At the meeting, Dealer Tire provided detailed and concrete plans to position the Company's account managers for success in the coming year, all of which constituted valuable and confidential competitive information for Dealer Tire.

35. Mr. Barbano was among the approximately seventy-five employees in attendance. The meeting included an on-screen PowerPoint presentation; no hard copies were distributed given the high commercial sensitivity of the information. Among other important details, the presentation disclosed that the Company's goal for 2018 was to retain fifty percent of its 2017 business with MOPAR, explained Dealer Tire's strategy for achieving that goal, and revealed certain incentives Dealer Tire planned to offer Chrysler dealerships in 2018.

36. During the presentation, Mr. Barbano took photographs of many of the slides describing the various incentive, marketing, and other plans included in the Company's strategy to retain MOPAR's business and to solicit other business.

37. Dealer Tire followed up the meeting with an email on November 20, 2017 providing several confidential documents related to Dealer Tire's strategic plans, and it expressly informed employees not to distribute or share the materials with anyone outside of Dealer Tire.

### Mr. Barbano's Resignation, Breach of the Agreement and Addendum, and Misappropriation of Trade Secrets, and AMI's Tortious Interference

38. On the morning of November 27, 2017, Mr. Barbano tendered his resignation from Dealer Tire. Despite multiple requests over the course of November 27 and 28, Mr.

Barbano refused to tell Dealer Tire where he would be working and evaded the question.

39. On the afternoon of November 28, Mr. Barbano eventually disclosed to Dealer Tire that he was taking a marketing role with Defendant AMI. Dealer Tire's Director of Sales immediately advised Mr. Barbano that working for AMI would be a breach of the Agreement and Addendum, as AMI is one of Dealer Tire's direct competitors.

40. On November 29, 2017, Dealer Tire, through counsel, sent a letter to Mr. Barbano and a separate letter to AMI, advising them both of Mr. Barbano's contractual obligation not to work for a competitor of Dealer Tire and requesting that they comply with the terms of the Agreement and Addendum. To date, Mr. Barbano and AMI have not complied with Dealer Tire's requests.

41. Since Mr. Barbano's resignation, Dealer Tire has started to receive reports from the field that Mr. Barbano already is calling upon some of the same Chrysler dealerships he serviced for Dealer Tire. Mr. Barbano also recently attended a meeting in Detroit, Michigan, at which he was attempting to recruit to AMI a candidate for employment whom Dealer Tire was also trying to recruit.

42. Mr. Barbano already may have leaked some of the confidential and proprietary information from the November strategy meeting. In a memorandum dated December 7, 2017, entitled "Tireworks Program Change" (the "MOPAR Memo"), MOPAR notified Chrysler dealerships that it will "be transitioning from [its] current single source supplier (Dealer Tire), to a National Account program" effective January 2, 2018. Under the heading "Current Tire Vendor Environment," the MOPAR Memo lists six anticipated competitive initiatives planned by Dealer Tire, including certain strategies of Dealer Tire's that MOPAR could have learned only from a source with knowledge of Dealer Tire's highly confidential business strategy and

11

plans. A true and correct copy of the MOPAR Memo is attached hereto as Exhibit C.

### Harm To Dealer Tire

43. Going forward, Mr. Barbano's employment at AMI will continue to unfairly benefit AMI because Mr. Barbano brings with him valuable knowledge and expertise gained from Dealer Tire's extensive training programs, access to Dealer Tire's proprietary tools, and knowledge of the business needs and preferences of Dealer Tire's customers that he serviced. As a result of Mr. Barbano's multi-year relationships with representatives of car dealerships and with Chrysler's field representatives – developed for the benefit of, in the name of, and at the expense of Dealer Tire, and made possible by the initial and ongoing training Mr. Barbano received from Dealer Tire – Mr. Barbano, as an employee of AMI, now is in a position to irreparably interfere with and damage the relationships of Dealer Tire with its customers and to leverage those relationships to the unfair benefit of AMI.

44. Mr. Barbano also will be in a position to use his knowledge of Dealer Tire's confidential information to provide AMI with an unfair advantage. Although AMI and other competitors of Dealer Tire are undoubtedly aware of Dealer Tire's general strategy of partnering and consulting with dealerships to increase their sales, these competitors do not know the specific, confidential techniques, processes, and initiatives that Dealer Tire uses to carry out its strategy. Mr. Barbano possesses that knowledge. Now at AMI, he can, for example, reveal the details of Dealer Tire's planned incentive programs to help AMI develop counter-strategies; he can use his knowledge of the services provided by Dealer Tire to Chrysler dealerships in his territory to more effectively advance AMI's attempts to win that business for AMI; and he can use his knowledge of Dealer Tire pricing to undercut Dealer Tire.

45. The conduct of Mr. Barbano and of AMI is causing, and, if not stopped, will continue to cause, severe and irreparable harm to Dealer Tire.

### First Cause of Action:
### Breach of Contract (against Mr. Barbano)

46. Dealer Tire repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

47. Mr. Barbano signed the Agreement and Addendum, both dated July 22, 2013. The Agreement and Addendum constitute a valid and binding written contract, made for valid consideration and governed by Ohio law.

48. Dealer Tire has performed all of its obligations under the Agreement and Addendum.

49. Mr. Barbano has unjustifiably and inexcusably breached the Agreement and Addendum.

50. As a direct and proximate cause of Mr. Barbano's wrongful conduct, Dealer Tire has suffered damages in an amount to be proven at trial as well as irreparable harm and loss.

### Second Cause of Action:
### Tortious Interference with Contract (against AMI)

51. Dealer Tire repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

52. The Agreement and Addendum constitute a valid contract.

53. Mr. Barbano was obligated under the Agreement and Addendum not to solicit Dealer Tire customers, not to disclose Dealer Tire's confidential business information, and not to compete with Dealer Tire.

54. Defendant AMI hired Mr. Barbano. No later than November 29, 2017, AMI learned of the Agreement and Addendum as a result of Dealer Tire's letter advising AMI of Mr.

Barbano's contractual obligation not to work for a competitor of Dealer Tire and requesting that AMI not continue to employ Mr. Barbano in violation of the Agreement and Addendum.

55. Upon information and belief, AMI, without privilege, continues to employ Mr. Barbano in violation of the Agreement and Addendum and the obligations that Mr. Barbano owes to Dealer Tire.

56. As a direct and proximate cause of AMI's wrongful conduct, Dealer Tire has suffered damages in an amount to be proven at trial as well as irreparable harm and loss.

### Third Cause of Action:
### Violation of Ohio Uniform Trade Secrets Act,
### Ohio Rev. Code 1333 et seq. (against all defendants)

57. Dealer Tire repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

58. The books, files, and records of Dealer Tire contain confidential business information, including, but not limited to, information about Dealer Tire's pricing system, dealership lists, dealership contacts, marketing strategies, sales techniques, selling process, tire program elements, automobile manufacturer field contacts, channel-unique information technology, and Dealer Tire's strategy for retaining Chrysler-related business.

59. This information derives independent economic value by not being accessible, through proper means, to competitors such as AMI, which can profit from its use or disclosure. Dealer Tire has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

60. Dealer Tire has taken more than adequate measures under the circumstances to maintain the secrecy of its confidential information, including without limitation by requiring all employees, including Mr. Barbano, to execute the Agreement to preserve the confidentiality of

14

such information.

61.    Additionally, by virtue of his employment, Mr. Barbano had a duty not to reveal confidential information obtained during his employment by Dealer Tire or to use such confidential information for his own benefit and to the detriment of Dealer Tire.

62.    By virtue of Dealer Tire's development and ownership of its confidential information, Dealer Tire is entitled to the exclusive use and enjoyment of this information.

63.    The confidential information of Dealer Tire was communicated to Mr. Barbano while he was employed in a position of trust and confidence.

64.    By engaging in the conduct described above, Mr. Barbano intentionally, willfully and maliciously misappropriated, threatened to misappropriate, misused, revealed and disclosed trade secrets and/or confidential or proprietary information or knowledge of Dealer Tire, and continues and will continue to do so, in violation of a confidential relationship between Mr. Barbano and Dealer Tire.

65.    On information and belief, Mr. Barbano inevitably will (if he has not already done so), use or disclose Dealer Tire's confidential information to AMI in the performance of his duties to AMI.

66.    On information and belief, AMI either accepted such information with the knowledge that it was confidential information taken by Mr. Barbano from Dealer Tire in violation of his duty of confidentiality, or AMI was deliberately indifferent or reckless in failing to prevent Mr. Barbano from using, disclosing or misappropriating Dealer Tire's confidential information. Further, on information and belief, AMI will similarly accept confidential information from Mr. Barbano.

67.    As a consequence of the foregoing, Dealer Tire has suffered damages in an

amount to be proven at trial as well as irreparable harm and loss.

### Fourth Cause of Action:
### Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. (against all defendants)

68. Dealer Tire repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

69. The actions of Mr. Barbano as described above constitute violations of one or more provisions of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 et seq.

70. The DTSA provides, in relevant part: "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).

71. The DTSA provides that "a court may grant an injunction – to prevent any actual or threatened misappropriation described in paragraph (1) on such terms as the court deems reasonable . . . ." 18 U.S.C. § 1836(b)(3)(A).

72. By engaging in the conduct described above, Mr. Barbano has intentionally, willfully and maliciously misappropriated, and upon information and belief, misused, revealed and disclosed trade secrets and/or confidential or proprietary information or knowledge of Dealer Tire, and continues and will continue to do so, in violation of a confidential relationship between Mr. Barbano and Dealer Tire.

73. On information and belief, Mr. Barbano inevitably will (if he has not already done so) use or disclose Dealer Tire's confidential information to AMI in the performance of his duties to AMI.

74. On information and belief, AMI either accepted such information with the knowledge that it was confidential information taken by Mr. Barbano from Dealer Tire in

violation of his duty of confidentiality, or AMI was deliberately indifferent or reckless in failing to prevent Mr. Barbano from using, disclosing or misappropriating Dealer Tire's confidential information. Further, on information and belief, AMI will similarly accept confidential information from Mr. Barbano.

75. As a consequence of the foregoing, Dealer Tire has suffered damages in an amount to be proven at trial as well as irreparable harm and loss.

### Fifth Cause of Action: Misappropriation

76. Dealer Tire repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

77. As an employee of Dealer Tire, Mr. Barbano possessed non-public information concerning Dealer Tire, including confidential information about its pricing system, dealership lists, dealership contacts, marketing strategies, sales techniques, selling process, tire program elements, automobile manufacturer field contacts, channel-unique information technology, and Dealer Tire's strategy for retaining Chrysler-related business.

78. Dealer Tire took reasonable steps to preserve the secrecy of its confidential information, including by requiring all employees, including Mr. Barbano, to execute the Agreement to preserve the confidentiality of such information.

79. Upon information and belief, Mr. Barbano disclosed Dealer Tire's confidential information and has sought to use that information for the benefit of AMI, which Mr. Barbano learned about only by reason of his employment with Dealer Tire.

80. As a direct and proximate cause of Mr. Barbano's wrongful conduct, Dealer Tire has suffered damages in an amount to be proven at trial as well as irreparable harm and loss.

**Prayer for Relief**

WHEREFORE, Dealer Tire demands that judgment be entered in its favor and against Defendants as follows:

1. That an injunction issue, temporarily, preliminarily until final hearing, and permanently thereafter:

    a. enjoining and restraining Defendants and any persons or entities acting under their direction, control or in concert therewith from, directly or indirectly, revealing, misappropriating, disclosing and/or requesting anyone to disclose any trade secret or confidential or proprietary information or knowledge of Dealer Tire; from using in any way or aiding or requesting anyone to use any trade secret or confidential or proprietary information or knowledge of Dealer Tire; from retaining the benefits resulting from the use, disclosure or misappropriation of any trade secret or confidential or proprietary information or knowledge of Dealer Tire; and from breaching or soliciting or aiding anyone to breach any contract with or legal obligation to Dealer Tire;

    b. ordering Defendants to return to Dealer Tire any and all documents, drawings, client or employee information and tangible or intangible records of Dealer Tire in their possession, including all copies and adaptations of such documents, data, information and records;

    c. enjoining and restraining Mr. Barbano from violating the restrictive covenant obligations contained in the Agreement and Addendum, including, but not limited to by engaging directly or indirectly in the

        provision of services or other activities for any Competing Business, as defined in the Agreement and Addendum;

2. Plaintiffs be awarded damages from the Defendants, jointly and severally, including:

    a. compensatory damages in an amount in excess of $75,000;

    b. punitive and/or exemplary damages on all common law claims and as permitted by statute;

    c. pre-judgment and post-judgment interest in an amount to be determined at trial; and

    d. the costs and attorney's fees incurred by Dealer Tire in bringing this action, including, but not limited to, pursuant to Section 6 of the Agreement;

3. That Dealer Tire be awarded such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Dealer Tire demands trial by a jury on all of the triable issues of this Complaint, pursuant to Local Civil Rule 38.1.

Dated: December 19, 2017

                                        Respectfully submitted,

| DEBEVOISE & PLIMPTON LLP | GROSS & GROSS L.L.C. |
|---|---|
| | By: */s/* <u>Robert L. Gross</u> |
| Jyotin Hamid* | Robert L. Gross (OH 006246) |
| Jared I. Kagan* | Timothy S. Cline (OH 0089262) |
| 919 Third Avenue | 22901 Millcreek Blvd. Suite 395 |
| New York, NY 10022 | Cleveland, OH 44122-5729 |
| Tel. (212) 909-6000 | Tel. (216) 839-1111 |
| Fax (212) 909 6836 | Fax (216) 839-1122 |
| Email:  jhamid@debevoise.com | Email: rlgross@gross-gross.com |
|        jikagan@debevoise.com |        tcline@gross-gross.com |

\* *pro hac vice* applications forthcoming     *Attorneys for Plaintiff,*
                                                        *Dealer Tire, LLC*